UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY MARIE MINER, | No. 2:14-cv-2498-CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff did not continue to be disabled for purposes of receiving Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND

Plaintiff, born September 9, 1959, applied for SSI benefits on September 21, 2011, alleging disability beginning December 23, 2010. Administrative Transcript ("AT") 12, 22. Plaintiff alleged she was unable to work due to poor vision, high blood pressure, shortness of breath, carpal tunnel, sciatic nerve problems, anxiety, depression, bladder problems, arthritis, asthma, knee problems, and muscle spasms in her back, stomach, and legs. AT 216. In a

1  decision dated May 2, 2013, the ALJ determined that plaintiff was not disabled.[1]  AT 12-23.  The

2  ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.     The claimant has not engaged in substantial gainful activity since September 21, 2011, the application date.
>
> 2.     The claimant has the following severe impairments: eyesight, high blood pressure, shortness of breath, obesity, carpal tunnel, sciatic nerve, bladder, arthritis, anxiety and depression.
>
> 3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

    capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b). Specifically, the claimant could lift and/or carry ten pounds frequently, twenty pounds occasionally; she could sit, stand and/or walk for six hours out of an eight-hour workday; she could occasionally climb, balance, stoop, crouch, kneel, and crawl; she is limited to frequent bilateral fine manipulations; she is to avoid concentrated exposure to irritants such as fumes, odors, dust, and gases; she is to avoid moderated use of hazardous machinery; and she is limited to only occasional decision making and changes in the work setting.

    5.     The claimant is unable to perform any past relevant work.

    6.     The claimant was born on April 28, 1961 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

    7.     The claimant was born on September 9, 1959 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

    8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

    9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

    10.     The claimant has not been under a disability, as defined in the Social Security Act, since September 21, 2011, the date the application was filed.

AT 14-23.

## II.   ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly considered plaintiff's fibromyalgia at step two of the sequential analysis, and when determining plaintiff's residual functional capacity ("RFC"); (2) improperly considered carpal tunnel syndrome when determining plaintiff's RFC; (3) improperly considered the medical evidence regarding plaintiff's medically determinable mental impairments; (4) improperly assessed the credibility of plaintiff's testimony; (5) improperly considered the lay witness report of plaintiff's friend; and (6) failed to include all of plaintiff's functional limitations in the hypotheticals posed to the vocational expert.

3

III.     LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.     ANALYSIS

A.     The ALJ did Not Err in Considering Plaintiff's Fibromyalgia

First, plaintiff argues that the ALJ erred by improperly assessing the impact of plaintiff's medically determinable impairment of fibromyalgia. Specifically, plaintiff argues that the ALJ erred at step two of the analysis by not including this impairment in the list of "severe" impairments, and further erred by failing to address this impairment's impact when determining plaintiff's RFC.

4

Plaintiff contends that the ALJ erred at step two by either not including plaintiff's fibromyalgia as a "severe" impairment, or not discussing why it did not amount to a severe impairment despite the fact that the medical evidence in the record demonstrates its existence.

An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

Even assuming for the sake of argument that the ALJ technically erred by not finding plaintiff's fibromyalgia severe at step two, such error is harmless if the ALJ proceeded to consider the effects of that impairment at subsequent steps. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Here, because the ALJ found multiple other physical and mental impairments to be severe at step two, the ALJ proceeded to subsequent steps of the sequential disability evaluation process. Accordingly, any error the ALJ may have committed at step two with regard her consideration of plaintiff's fibromyalgia was harmless.

Plaintiff further contends that the ALJ also did not properly address plaintiff's fibromyalgia when determining plaintiff's RFC because the ALJ only minimally discussed the existence of the impairment in the context of the medical findings in the record and did not specifically address what impact that impairment had on her ability to perform work-related functions. This argument lacks merit. In her decision, the ALJ noted that her RFC determination "takes into consideration the claimant's subjective complaints while finding the maximum limitations based on the objective evidence." AT 22. Among the medical evidence the ALJ reviewed in coming to her RFC conclusion were records from plaintiff's physicians diagnosing plaintiff with fibromyalgia and opining the impact that impairment had on plaintiff's functional

1    capacity.  Among the medical opinions to which the ALJ gave "great weight" in her
2    determination of plaintiff's RFC were those of Dr. Fang, one of plaintiff's treating physicians,
3    and Dr. Johnson, a consultative examining physician, who both diagnosed plaintiff with
4    fibromyalgia but still noted clinical findings and opined functional limitations that generally
5    supported the ALJ's RFC determination that plaintiff could perform light work with some
6    additional limitations.  AT 623, 335-36.  The ALJ properly considered these two opinions, along
7    with the other medical evidence in the record regarding fibromyalgia to arrive at the functional
8    limitations contained within her RFC determination.  Therefore, the ALJ's RFC determination
9    both took into account the impact of plaintiff's fibromyalgia and was supported by substantial
10   evidence from the record.

11               B.        The ALJ Properly Considered the Impact of Carpal Tunnel Syndrome When
12                         Determining Plaintiff's RFC

13         Plaintiff next argues that the medical evidence regarding her carpal tunnel syndrome
14   demonstrates that the ALJ's RFC determination that plaintiff could engage in "frequent bilateral
15   fine manipulation" with her fingers was not supported by substantial evidence.  In support of this
16   assertion, plaintiff cites to her medical records from the period between late 2011 and August of
17   2012 demonstrating that plaintiff had been diagnosed with carpal tunnel syndrome, was suffering
18   from neuropathy in her wrists that was "mild-to-moderate on the left and moderate on the right,"
19   and was using wrist supports on both wrists without relief.  AT 1007, 1011, 1016. 1020.  Plaintiff
20   asserts that even the State agency physicians who reviewed plaintiff's record opined that
21   plaintiff's impairments limited her to only occasional "fine manipulation with both hands due to
22   carpal tunnel syndrome," which was more limited than what the ALJ determined.  AT 101, 117.
23         However, even assuming, without deciding, that the ALJ erred by finding that plaintiff
24   could engage in frequent fine finger manipulation in light of the impact of her carpal tunnel
25   syndrome, the record reveals that any error by the ALJ in determining that plaintiff could perform
26   this activity on a frequent, rather than occasional, basis was harmless.  During the administrative
27   hearing, the vocational expert responded to the ALJ's third hypothetical, which included all of the
28   same limitations found in the ALJ's RFC determination but limited plaintiff to only "occasional

fingering," by stating that plaintiff could still be able to perform work as an informational clerk and indicating, without specifically identifying, that there were other "light work" jobs available that plaintiff could still perform given such limitations. AT 69. Accordingly, even if plaintiff's carpal tunnel syndrome limited her to only occasional fingering, the ALJ could still have relied on the vocational expert's testimony to find that there were jobs that plaintiff could still perform and therefore demonstrated that plaintiff was not disabled within the meaning of the Social Security Act.

        C.        The ALJ did Not Err in Considering Plaintiff's Mental Impairments

Third, plaintiff contends that the ALJ erred in considering the impact of her mental impairments. Specifically, she argues that while the ALJ accorded "great weight" to the opinions of Dr. Torrez, a consulting psychiatrist, and the psychiatric non-examining State agency physicians, she did not adopt some of the mild-to-moderate mental limitations these physicians opined into her RFC determination.

However, the ALJ was not required to adopt all of the limitations opined by these physicians solely because she gave their opinions "great weight" and generally found them persuasive as a whole. See 20 C.F.R. § 404.1527(e)(2) ("Administrative law judges are responsible for reviewing the evidence and making findings of fact and conclusions of law . . . [and] are not bound by any findings made by State agency medical or psychological consultants."); Wilkinson v. Comm'r Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014) (unpublished) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight. On the contrary, the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner."); Koonce v. Apfel, 166 F.3d 1209 (4th Cir. 1999) ("The determination of a claimant's RFC and the application of vocational factors are reserved to the ALJ, who is not bound by medical opinion on these subjects."). Furthermore, the ALJ relied on multiple medical sources in addition to Dr. Torrez's and the psychiatric State agency physicians' opinions in reaching her RFC conclusion regarding the impact of plaintiff's mental impairments. See AT 20. This evidence, in conjunction with the physicians' opinions,

substantially supported the ALJ's RFC determination with regard to the impact of plaintiff's mental impairments.

Moreover, even assuming, without deciding, that the ALJ somehow erred in not incorporating the mental limitations opined by Dr. Torrez or the psychiatric State agency physicians, any such error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). Dr. Torrez opined that plaintiff's mental impairments had only a "mild" to "moderate" impact on plaintiff's ability to perform various basic mental workplace activities and determined that plaintiff had a GAF score of 57,[2] both indicating that plaintiff's mental impairments caused, at worst, only moderate functional limitations. AT 323-24. The psychiatric State agency physicians similarly opined mild-to-moderate mental limitations. AT 97-98, 118-19. The Ninth Circuit Court of Appeals has already held that moderate mental limitations are not sufficiently severe so as to impose non-exertional limitations that would require the ALJ to obtain vocational expert testimony. Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (involving an assessment that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.").

D.  <u>The ALJ did Not Err in Finding Plaintiff's Testimony Concerning the Extent of Her Pain and Functional Limitations Less Than Fully Credible</u>

Fourth, plaintiff argues that the ALJ erred in assessing the credibility of plaintiff's testimony because she determined that it was only partially credible without providing clear and convincing reasons for doing so.

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found plaintiff's testimony to be "not entirely credible" for the following reasons: (1) plaintiff's daily living activities "reflect a significant functional capacity"; (2)

plaintiff "has not received the type of medical treatment one would expect for a totally disabled individual"; and (3) plaintiff's "alleged loss of function is not supported by objective medical findings." AT 18. These were clear and convincing reasons for discounting plaintiff's testimony that were supported by substantial evidence from the record.

First, the ALJ determined that plaintiff's daily living activities indicated that plaintiff's limitations were less extreme than what plaintiff expressed through her testimony. Plaintiff argues that the ALJ did not fairly characterize this evidence and that it actually corroborates plaintiff's testimony regarding the extent of her impairments. However, substantial evidence from the record supported the ALJ's determination.

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, the ALJ highlighted evidence from the record indicating that plaintiff engaged in "somewhat normal" daily activities and interactions such as mild exercise, playing with her granddaughter, cooking, washing dishes, vacuuming, grocery shopping, caring for pet fish, watering plants, visiting family members, and going out to dinner occasionally. AT 18 (citing AT 245-55, 322-33). Based on this evidence, the ALJ determined "that the physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment." AT 18.

To be sure, the record also contains some contrary evidence, such as plaintiff's testimony that she is only able to watch her granddaughter with her boyfriend's assistance, has problems lifting and gripping items with her hands, and can only do certain household chores with assistance from others, suggesting that plaintiff's activities are more limited. AT 35-36, 28, 50. However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). Accordingly, the ALJ properly considered plaintiff's daily activities in finding plaintiff's testimony less than fully credible.

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). Indeed, as the ALJ pointed out, plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." AT 18. Plaintiff's treating and examining records generally show that plaintiff received routine and conservative treatment for her impairments in the form of prescribed medicines, physical therapy, and recommendations to engage in gentle aerobic exercise, and that plaintiff generally responded favorably to such treatment. E.g., AT 714, 1108, 1235, 1245, 1255. Accordingly, substantial evidence from the record also supported this rationale for discounting plaintiff's testimony.

With regard to the ALJ's final reason for discounting plaintiff's testimony, plaintiff argues that the medical records actually corroborated plaintiff's testimony regarding the extent of her pain and functional limitations. However, contrary to plaintiff's contention, substantial evidence supported the ALJ's determination that the medical evidence demonstrated that plaintiff's pain

11

1  and limitations were less severe than she alleged.  For instance, Dr. Johnson, an examining
2  physician who provided an orthopedic evaluation of plaintiff, opined that plaintiff's physical
3  limitations were generally in line with an ability to perform light work as it is defined in 20
4  C.F.R. 416.967(b), such as the ability to lift and carry 20 pounds occasionally and 10 pounds
5  frequently, and sit, stand, and walk for up to 6 hours total in an 8-hour workday.  AT 335-36.
6  Similarly, Dr. Feng, one of plaintiff's treating physicians, opined that while plaintiff suffered
7  from tenderness in multiple joints and finger numbness due to carpal tunnel syndrome, she
8  exhibited "5/5" normal muscle strength with the ability to engage in "active movement against
9  full resistance without fatigue," was negative for straight leg raises, and had neurological
10 sensation, reflex, and motor strength all "within normal limit[s]."  AT 623-24.  With regard to
11 mental limitations, Dr. Torrez, an examining psychiatrist, opined that plaintiff had only mild-to-
12 moderate mental limitations.  AT 324.  Although lack of medical evidence cannot form the sole
13 basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor
14 for the ALJ to consider.  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  Here, the ALJ
15 provided other clear and convincing reasons for discounting plaintiff's testimony.  Therefore, she
16 did not err in also providing this reason in support of her determination that plaintiff's testimony
17 was less than credible.
18       In sum, the ALJ provided multiple clear and convincing reasons in support of her adverse
19 credibility determination.  Accordingly, she did not err in finding plaintiff's testimony less than
20 fully credible.
21            E.     The ALJ did Not Err in Discounting the Lay Witness Report
22       Fifth, plaintiff argues that the ALJ gave insufficient reasons for discounting the third-party
23 witness report provided by plaintiff's friend.
24       "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects
25 ability to work is competent evidence, and therefore cannot be disregarded without comment."
26 Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915,
27 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's
28 symptoms and daily activities are competent to testify to condition).  "If the ALJ wishes to

discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. Nevertheless, the ALJ is not required "to discuss every witness's testimony on a individualized, witness-by-witness basis." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). Indeed, while the applicable regulations require "the ALJ to consider testimony from family and friends submitted on behalf of the claimant," they "do not require the ALJ to provide express reasons for rejecting testimony from each lay witness." Id. (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3)). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina, 674 at 1114.

When the ALJ provides clear and convincing reasons for discounting a claimant's testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for rejecting the third-party lay witness's testimony. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009); see also Molina, 674 at 1114. Furthermore, even when the ALJ errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is harmless if that layperson's testimony largely reflects the limitations described by the claimant and the ALJ provides clear and convincing reasons for discounting the claimant's testimony, because the layperson's testimony in such a circumstance is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." Molina, 674 F.3d at 1122 (quotation marks omitted).

Here, the ALJ gave the following reasons for discounting plaintiff's friend's third party statement to the extent that it was inconsistent with the ALJ's RFC determination:

> The statements made by the claimant's friend have not been given under oath. She is not a medical professional and as a lay witness, the claimant's friend is not competent to make a diagnosis or argue the severity of the claimant's symptoms in relationship to her ability to work. The claimant's friend is the claimant's roommate, and therefore she has a financial interest in seeing the claimant receive benefits. Therefore, her opinion is not an unbiased one. Most importantly, the clinical or diagnostic medical evidence that is discussed more thoroughly below does not support her statements.

13

1  AT 18. Plaintiff asserts that none of these reasons were properly "germane" reasons for
2  discounting this report. With respect to all but the ALJ's final reason, that the report was not
3  supported by the medical evidence, the court agrees.

4  The third party statement submitted by plaintiff's friend was written on the questionnaire
5  form provided by the Social Security Administration. See AT 259-68. If an ALJ were permitted
6  to summarily discount any third-party statement written on such a form because the form does not
7  require the third-party to make his or her statement under oath, that would completely undermine
8  the entire purpose of such a form, which is to provide third-parties the ability to submit a
9  statement in a format that the Administration would presumably consider as proper lay witness
10 evidence. Similarly, an ALJ cannot disregard a third party statement simply because the third
11 party making the statement is not a medical professional. The ALJ's reasoning in this case would
12 completely undermine the relevant regulations by limiting third party statements to only medical
13 professionals. See 20 C.F.R. § 416.913(d) (stating that the ALJ may consider as evidence reports
14 from non-medical sources, including the plaintiff's spouses, parents, and friends). Finally, with
15 respect to the ALJ's third reason, even the Commissioner agrees in her briefing that the ALJ's
16 determination that plaintiff's friend was also her roommate was based on a misinterpretation of
17 the facts.

18 However, even though the above three reasons given by the ALJ were not germane
19 reasons for discounting the report of plaintiff's friend, the error is harmless because the ALJ
20 provided at least one other valid reason for only partially crediting the statement. See Molina,
21 674 F.3d at 1115 (ruling harmless error when ALJ provided one or more invalid reasons for
22 disbelieving testimony, but also provided valid reasons that were supported by the record).
23 Indeed, the ALJ also found that the medical evidence in the record did not support plaintiff's
24 friend's statement to the extent it was inconsistent with the ALJ's RFC determination. The ALJ
25 provided a similar reason in support of her adverse credibility determination with regard to
26 plaintiff's testimony. Because plaintiff's friend's third-party report largely reiterates the same
27 complaints regarding the extent of plaintiff's pain and limitations, the ALJ's specific, clear, and
28 convincing reasons for discounting plaintiff's testimony are equally germane to the third-party

1 testimony. Even had the ALJ failed to explicitly restate, or incorporate by reference, this reason
2 given for discounting plaintiff's testimony with respect to this third-party statement, it would
3 have been harmless and, therefore, not warrant remand. See Molina, 674 F.3d at 1115-22.

   F. The ALJ Posed Proper Hypotheticals to the Vocational Expert at Step Five

5   Finally, plaintiff contends the ALJ failed to include all of plaintiff's limitations in the
6 hypotheticals posed to the VE when determining that there were a significant number of jobs that
7 plaintiff could perform. In particular, plaintiff argues that the ALJ failed to account for plaintiff's
8 functional limitations because she did not properly evaluate plaintiff's physical and mental
9 impairments.

10   Hypothetical questions posed to a vocational expert must set out all the substantial,
11 supported limitations and restrictions of the particular claimant. Magallanes, 881 F.2d at 756. If
12 a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in
13 the national economy the claimant can perform has no evidentiary value. DeLorme v. Sullivan,
14 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical
15 questions, based on alternate interpretations of the evidence, the hypothetical that ultimately
16 serves as the basis for the ALJ's determination must be supported by substantial evidence in the
17 record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

18   Here, the ALJ posed hypotheticals to the VE that included the limitations expressed in the
19 ALJ's RFC determination. As the ALJ noted in her decision, the RFC determination was based
20 on a consideration of "all symptoms and the extent to which th[ose] symptoms can reasonably be
21 accepted as consistent with the objective medical evidence and other evidence." AT 17. While
22 plaintiff contends that the ALJ failed to properly consider all of plaintiff's mental and physical
23 limitations, plaintiff's subjective complaints, and the third party report, the court finds all such
24 contentions to be without merit for the reasons discussed above. Because the ALJ properly
25 determined plaintiff's RFC and included those limitations in the hypotheticals she posed to the
26 ALJ during the hearing, the ALJ was permitted to rely on the vocational expert's testimony in
27 determining that there were other jobs that plaintiff could perform given her limitations.
28 Accordingly, the ALJ's reliance on the vocational expert's testimony to determine that plaintiff

was not disabled at step five was without error.

V. <u>CONCLUSION</u>

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 14) is granted; and

3. Judgment is entered for the Commissioner.

Dated: September 18, 2015

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11.miner.ss